opinion

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| NORMA A. SILVA,        )<br>                              )<br>    Plaintiff,            )<br>                              )<br>vs.                          )<br>                              )<br>MICHAEL CHERTOFF, Secretary of the )<br>Department of Homeland Security, )<br>                              )<br>    Defendant.           )<br>_____) | No.  CV 04-220-TUC-CKJ<br><br>**ORDER** |

Pending before the Court is Defendant's Motion for Summary Judgment [Doc. # 32]. Plaintiff has filed a Response and Defendant has filed a Reply.  Oral argument was presented to the Court on April 30, 2007.

*Background*

In December 1976, Norma Silva ("Silva") began her employment with U.S. Customs. Silva began her employment as a GS-3 clerk-typist and is currently working as a GS-11 Customs and Border Patrol ("CBP") officer.

On August 26, 2001, Silva, while working as a CBP officer, inspected a vehicle within the secondary inspection area at the Nogales, Arizona, port of entry; Silva informed the driver that he could leave.  Silva then noticed that CBP officer Aaron Davis ("Davis") was directing the same driver to produce his border crossing card; Silva informed Davis that the vehicle had already been inspected and was free to go.

A verbal confrontation ensued between Silva and Davis. During this confrontation, Davis used profanity, but Silva did not. Silva told Davis that she was going to talk to a supervisor and contact internal affairs. Davis stated that, if she did, he was going to tell them that she was selling "stuff" out of her house. Silva asserts that Davis yelled during this confrontation, while Silva spoke in a loud tone of voice. Silva was approximately 50 years old at the time of this incident and is of Mexican descent. Davis is male, under the age of 40, and not of Mexican descent.

Eight months later, Silva received a letter of reprimand from Port Director Joseph Lafata for her verbal confrontation with Davis. Lafata recommended that Davis receive a three day suspension for his conduct; Davis submitted a reply to the proposed suspension. Donna De La Torre, Director of Field Operations for U.S. Customs and Border Protection, reduced Davis' suspension to a letter of reprimand[1] based on Davis' expression of remorse for the incident, his assurances that his conduct would not be repeated, and the lapse of time from the time of the incident to the date of the decision.

On April 30, 2004, Silva filed a Complaint under Title VII of the Civil Rights Act and under the Age Discrimination in Employment Act ("ADEA") alleging that Defendant discriminated against her on the basis of age and national origin. Silva asserts that her supervisor, Cleveland Ainsworth,[2] discriminated against her on the basis of age or national origin (Silva is of Mexican descent) because he never told her that, on August 26, 2001 (the day of the incident), Davis told Ainsworth that Silva was selling narcotics out of her house. Silva stated that her discrimination claim is based on her belief that Davis should have received more serious discipline than Silva was given. During the deposition of Silva on September 7, 2006, Silva's attorney stated that issues of sex discrimination and race discrimination were also presented; counsel also stated that an amended complaint had not

---

[1] Silva claimed she did not know what, if any, discipline Davis received, but she heard rumors that it was not significant.

[2] Mr. Ainsworth is now deceased.

- 2 -

been made yet.[3]  An amended complaint has not been filed.

Silva does not assert that other supervisors have discriminated against her on the basis of age or Mexican descent.  Silva has had twenty supervisors during her employment with U.S. Customs; half of Silva's supervisors were Hispanic and five of her supervisors were women.

Silva asserted in answers to interrogatories that, following her complaint to management, she was subject to eight adverse employment actions.  Additionally, during her deposition testimony, Silva testified that the alleged adverse actions were the result of her complaining to the EEOC.  However, there is no allegation of retaliation in the Complaint.  Silva's alleged adverse employment actions include:

1. Davis left the Equal Employment Opportunity reports in an office area where other officers could see them and showed them to other officers, resulting in her ostracization;

2. On September 7, 2004, Silva was issued a "letter of caution;"

3. In October 2004, management circulated an e-mail suggesting Silva had engaged in improper political activity;

4. On or about October 1, 2004, Silva was issued a "letter of reprimand" for her lack of cooperation with respect to an August 25, 2004, request for assistance in conducting a pat-down of a female crosser;

5. Management investigated Silva after Davis made the allegation that Silva had been selling drugs out of her home;

6. In approximately December 2005, Silva had to work near Davis;

7. In April 2006, management allowed Davis to intimidate her, including one incident where Davis followed her home, and;

8. On June 22, 2006, Silva was displaced from her cashier position to a less favorable position while Davis was left in an office position.

On October 19, 2006, Defendant filed a Motion for Summary Judgment.  A response and reply have been filed.

---

[3]In her Response, Silva asserts that she has raised issues of discrimination based on sex, age, and national origin.  However, the Complaint does not allege discrimination based on sex.

- 3 -

*Objections to Statement of Facts*

Defendant has included objections to Silva's statement of facts in his Reply. A "genuine" issue of "material" fact cannot be created by a party simply making assertions in its legal memoranda. *S.A. Empresa De Vicao Aerea Rio Grandense v. Walter Kidde & Co.*, 690 F.2d 1235 (9th Cir. 1980). Declarations and other evidence that would not be admissible may be stricken. *FDIC v. New Hampshire Ins. Co.*, 953 F.2d 478, 484 (9th Cir. 1991).

The Court finds that Peter Silva's ("Mr. Silva") affidavit (Exhibit A) is self-serving and has limited foundation. Further, many statements do not allege personal knowledge. *See Skillsky v. Lucky Stores, Inc.*, 893 F.2d 1088, 1091 (9th Cir. 1990) ("Like affidavits, deposition testimony that is not based on personal knowledge is hearsay is inadmissible and cannot raise a genuine issue of material fact sufficient to withstand summary judgment."). However, the Court accepts those statements of Mr. Silva based on personal knowledge.

Furthermore, the memorandum submitted by Inspector Louis Torres (Exhibit C) does not comply with 28 U.S.C. § 1746 (Generally, any matter that "is required or permitted to be supported, evidenced, established, or proved" may be done so by an unsworn declaration in writing of the person making the same "which is subscribed by him, as true under penalty of perjury, and dated[.]"). Nor is there substantial compliance with the statute that may permit its consideration.[4] The Court will not accept this inadmissible evidence.

---

[4] At least one circuit has recognized that substantial compliance with the statute may not require that a declaration state that it is "true." *See LeBoeuf, Lamb, Greene & MacRae, L.L.P., v. Worsham*, 185 F.3d 61, n. 2 (2nd Cir. 1999) *citing Nissho-Iwai American Corp. v. Kline*, 845 F.2d 1300 (5th Cir. 1988). Acceptance of the penalties of perjury may provide substantial compliance with the statute. *Olympic Chartering S.A. v. Ministry of Industry and Trade of Jordan*, 134 F.Supp. 528 (S.D.N.Y. 2001), n. 2 (adopting n. 2 of the Report and Recommendation); *see also Knight v. United States*, 845 F.Supp. 1372 (D.Ariz. 1993) (court did not discuss whether declaration stated that the statement was true; court found declaration made under penalty of perjury and dated complied with 28 U.S.C. § 1746). While the Ninth Circuit Court of Appeals has not addressed this issue, other courts have determined that substantial compliance with the statute requires both an acceptance of the penalties of perjury and a statement that the declaration is "true." *Matsuda v. Wada*, 101 F.Supp. 1315 (D.Haw. 1999); *Smith v. Muscatell*, 106 B.R. 307 (MD.Fl. 1989).

1　　　　　The remaining objections place the statements in context and clarify them. 2 Defendant's objections are overruled, but the Court advises the parties that it will only 3 consider the admissible evidence that is supported by specific facts that may show a genuine 4 issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 5 2505, 2510 (1986).

*Claim of Discrimination Based on Sex and Claim of Retaliation*

　　　　　Silva asserts that she should be permitted to include her claims of retaliation because they are in retaliation of her complaint of discrimination. Similarly, Silva asserted in her Response that her Complaint included a claim of discrimination based on her sex. Title VII actions cannot proceed in federal court unless a charge of discrimination has first been timely filed with the Equal Employment Opportunity Commission ("EEOC"). *Santa Maria v. Pacific Bell*, 202 F.3d 1170, 1176 (9th Cir. 2000). Silva has not shown that she filed a charge of discrimination with the EEOC regarding the claim of retaliation. In fact, her deposition testimony indicates that she considered filing such a claim, but decided not to. However, a complaint may "encompass any discrimination like or reasonably related to the allegations of the EEOC charge." *Freeman v. Oakland Unified School District*, 291 F.3d 632, 636 (9th Cir. 2002).

　　　　　However, Silva has not included these claims in her Complaint or in an Amended Complaint. Silva has not provided Defendant with adequate notice of the additional claims. *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963 (9th Cir. 2006); *Conley v. Gibson*, 3550U.S. 41, 47-48, 78 S.Ct. 99, 103 (1957) (pleading must give fair notice of the claim and the grounds upon which it rests). Indeed, counsel's discussions indicating that the claims would be amended with no resulting amendment would indicate that Silva did not seek to pursue those claims. Moreover, although the facts alleged may place a defendant on notice even if the precise nature of the claim is not alleged, *Self Directed Placement Corp. v. Control Data Corp.*, 908 F.2d 462, 466 (9th Cir. 1990), that has not occurred in this case (especially in light of statements that seem to indicate an amended complaint would be filed

1  yet one was not). The facts presented in the Complaint did not place Defendant on notice as
2  to the claims of sex discrimination and retaliation.

3  Silva argues that Defendant was placed on actual notice regarding the sex
4  discrimination claim and the retaliation claim because those issues were investigated and
5  discussed. However, this argument fails to acknowledge that, after an investigation, it is just
6  as likely that Silva determined such claims were not warranted by existing law or the facts
7  did not have evidentiary support. *See* Fed.R.Civ.P. 11(b) (by presenting claim, attorney or
8  pro se plaintiff certifies good faith basis for claim). The failure to make a clear presentation
9  of claims in the complaint places the onus on the Court to decipher what claims are
10 presented. *See e.g., Haynes v. Anderson & Strudwick, Inc.*, 508 F.Supp. 1303 (D.C.Va.
11 1981); *see also* Fed.R.Civ.P. 8(a) (complaint is to contain a "short and plain statement of the
12 claim showing that the pleader is entitled to relief"). Silva has not presented any basis for
13 the Court to conclude that Silva intended Defendant to have actual notice of the possible
14 additional claims as opposed to concluding that, in light of Fed.R.Civ.P. 11(b) requirements,
15 Silva decided the inclusion of the possible additional claims was not appropriate. The Court
16 finds that the claims of discrimination based on sex and retaliation are not presented in this
17 case.

18

19 *Summary Judgment Standard*

20 A party moving for summary judgment has the initial burden to demonstrate, "with
21 or without supporting affidavits[,]" the absence of a genuine issue of material fact and that
22 judgment as a matter of law should be granted in the moving party's favor. *Celotex Corp.*
23 *v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553 (1986), quoting Fed.R.Civ.P. 56. A
24 material fact is genuine "if the evidence is such that a reasonable jury could return a verdict
25 for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct.
26 2505, 2510 (1986). The facts material in a specific case are to be determined by the
27 substantive law controlling a given case or issue. *Id.*
28 Once the moving party has met the initial burden, the opposing party must "go beyond

the pleadings" and "set forth specific facts showing that there is a genuine [material] issue for trial." *Id.,* internal quotes omitted. In opposing summary judgment, plaintiff is not entitled to rely on the allegations of his complaint, Fed.R.Civ.P. 56(e), or upon conclusory allegations in affidavits. *Cusson-Cobb v. O'Lessker*, 953 F.2d 1079, 1081 (7th Cir. 1992). Further, "a party cannot manufacture a genuine issue of material fact merely by making assertions in its legal memoranda." *S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines) v. Walter Kiddle & Co.*, 690 F.2d 1235, 1238 (9th Cir. 1982).

The Court is not to make credibility determinations with respect to the evidence offered and is required to draw all inferences in a light most favorable to the non-moving party. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987), citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is not appropriate "where contradictory inferences may reasonably be drawn from undisputed evidentiary facts[.]" *Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324 (9th Cir. 1980).

*Age Discrimination and National Origin Discrimination*

The ADEA prohibits an employer from discriminating against its employees because of their age:

It shall be unlawful for an employer –

(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age; or

(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age[.]"

29 U.S.C. § 623(a). The substantive prohibitions of the ADEA are modeled on those of 42 U.S.C. § 2000e-2 ("Title VII"). Because of the relationship between the ADEA and Title VII, the substantive standards, burdens, and organizations of proof developed under Title VII have been extended to federal claims of age-based employment discrimination. *Palmer v. United States*, 794 F.2d 534, 537 (9th Cir. 1986) ("The criteria applied to a Title VII

1 discrimination claim also apply to claims arising under the ADEA.")

2     It is also an unlawful employment practice for an employer:

3 (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individuals' race, color, religion, sex, or national origin; or

6 (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex or national origin.

8 42 U.S.C. §2000e-2(a).

9     The ADEA claimant has the ultimate burden of establishing that her age was a determining factor in the employer's actions. *Whalen v. Unit Rig, Inc.*, 974 F.2d 1248, 1252 (10th Cir. 1992); *Douglas v. Anderson*, 656 F.2d 528, 531 (9th Cir. 1981). Similarly, the Title VII claimant has the ultimate burden of establishing her class (i.e., his national origin), was a "'determining factor' in the employer's allegedly unlawful conduct." *Pejic v. Hughes Helicopters, Inc.*, 840 F.2d 667, 674 (9th Cir. 1988).

*Disparate Treatment Discrimination*

    A plaintiff claiming disparate treatment must prove that the employer acted with a discriminatory motive: "That is, the plaintiff's age [or national origin] must have actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome." *Reeves v. Sanderson Plumbing*, 530 U.S. 133, 141, 120 S.Ct. 2097, 2105 (2000), internal quotes omitted. A disparate treatment age discrimination claim may be proved by direct, statistical, or circumstantial evidence that gives rise to an inference of age discrimination. *Ritter v. Hughes Aircraft Co.*, 58 F.3d 454, 457 (9th Cir. 1995); *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616 (7th Cir. 2000) ("Direct evidence essentially requires an admission by the decision-maker that his actions were based on the prohibited animus"). In this case, there is no direct evidence that gives rise to an inference of age or national origin discrimination. Where a disparate treatment claim is proved by circumstantial evidence, the three-step, burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411

1  U.S. 972, 93 S.Ct. 1817 (1973), is used.  *See Reeves*, *supra* (United States Supreme Court
2  assumes Title VII burden-shifting framework applies in ADEA cases).

3  Under the burden shifting analysis, the initial burden of production is on Silva to
4  establish a *prima facie* case of discrimination.  A mere showing that there was disparate
5  treatment is not sufficient; rather Silva must show that the alleged disparate treatment was
6  the result of intentional discrimination based upon her protected class characteristics.  *Equal*
7  *Employment Opportunity Commission v. Flasher Co., Inc.*, 986 F.2d 1312, 1314 (10th Cir.
8  1992).  Silva's claims are based on disparate treatment based on age and national original.

9  Generally, to establish a prima facie case of disparate treatment, a plaintiff must show
10 that "(1) she belongs to a protected class; (2) she was performing according to her employer's
11 legitimate expectations; (3) she suffered an adverse employment action, and (4) other
12 employees with qualifications similar to her own were treated more favorably."  *Godwin v.*
13 *Hunt Wesson, Inc.* 150 F.3d 1217, 1220 (9th Cir. 1998); *Vasquez v. County of Los Angeles*,
14 349 F.3d 634 (9th Cir. 2004).  However, the Supreme Court noted in *McDonnell Douglas*
15 that, because the facts vary in Title VII cases, the four factors may not be necessarily
16 applicable in all situations.  411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13.  Other courts have
17 found that, in the context of the imposition of discipline, a plaintiff must show that (1) she
18 is a member of a protected class; (2) the conduct for which she was disciplined was similar
19 to that of a person outside of her protected class, and; (3) the discipline she received was
20 more severe than the discipline given the similarly-situated employee.  *See e.g., Moore v.*
21 *City of Charlotte, N.C.*, 754 F.2d 1100 (4th Cir. 1985); *Jones v. Gerwens*, 874 F.2d 1534
22 (11th Cir. 1989).

23

24 *Adverse Employment Action*

25 The Ninth Circuit interprets the requirement for an adverse employment action
26 broadly.  *Ray v. Henderson*, 217 F.3d 1234 (9th Cir. 2000); *see also Strother v. Southern*
27 *California Permanente Medical Group*, 79 F.3d 859, 869 (9th Cir. 1996) (later transfer
28 constitutes an adverse employment action); *Hashimoto v. Dalton*, 118 F.3d 671, 676 (9th Cir.

1997) (dissemination of unfavorable job reference an adverse employment action). An adverse employment action is shown where the employer's decision imposed a "material change in the terms and conditions of a person's employment." *Chuang v. Univ. of Cal.*, 225 F.3d 1115, 1126 (9th Cir. 2000); *see also Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 919 (9th Cir. 1997) (holding that transfer with no reduction in compensation did not constitute an adverse employment action); *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1465 n. 6 (9th Cir. 1994) (questioning whether transfer from swing shift to day shift was adverse employment action where employee "was not demoted, or put in a worse job, or given any additional responsibilities"); *Yates v. AVCO Corp.*, 819 F.2d 630, 638 (6th Cir.1987) (no adverse employment action where transfer did not result in loss of salary or benefits). The United States Supreme Court has clarified that "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse[.]" *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. —, 126 S.Ct. 2405, 2415, 165 L.Ed.2d 345 (2006).

*Apparent Claims of Retaliation*

Silva's deposition testimony establishes that she believes her eight listed adverse employment actions were retaliatory. However, Silva has not alleged a retaliation claim. The Court will briefly discuss the claims in a disparate treatment context.

Silva's first alleged adverse action is that Davis left a copy of affidavits taken by the EEOC investigator in an office area where other officers could see them. Apparently Silva's seventh alleged adverse action includes an allegation that Davis followed Silva and her husband home one time approximately five years after the confrontation between Silva and Davis. However, Title VII and the ADEA generally governs the relations between employers and employees, not the relations between employees. *City of Los Angeles Dept. of Water & Power v. Manhart*, 435 U.S. 702, 718 n. 33, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978). Indeed, Silva does not allege a retaliation or hostile work environment. *See e.g., Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000) (where plaintiff asserted retaliation, "ostracism

1  suffered at the hands of coworkers [did not] constitute an adverse employment action"). The
2  conduct of Davis does not constitute an adverse employment action in a disparate treatment
3  action.
4       Silva's second alleged adverse action as stated in her answers to interrogatories is that
5  she received a "letter of caution." However, Silva's deposition testimony establishes that she
6  did not receive this letter of caution.
7       Silva's third alleged adverse action is that management circulated an e-mail suggesting
8  Silva had engaged in improper political activity. However, Silva has not presented any facts
9  to support her assertion that the e-mail stated that Silva was the individual engaging in the
10 improper political activity. Moreover, Silva does not allege how this was an *employment*
11 action. This conduct does not constitute an adverse employment action.
12      Silva's fourth alleged adverse employment action is that, on or about October 1, 2004,
13 Silva was issued a "letter of reprimand" for her lack of cooperation with respect to an August
14 25, 2004, request for assistance in conducting a pat-down of a female crosser. A letter of
15 reprimand may constitute an adverse employment action. *See Vasquez v. County of Los*
16 *Angeles*, 349 F.3d 634 (9th Cir. 1998) (assuming of purposes of *prima facie* case that the
17 issuance of a warning letter constituted an adverse employment action); *but see Nunez v. City*
18 *of Los Angeles*, 147 F.3d 867, 875 (9th Cir. 1998) (threats and harsh words are not sufficient
19 to constitute adverse employment action in retaliation claim). The letter of reprimand,
20 included in Defendant's Exhibit A, contains harsh language and advises Silva that any future
21 misconduct may result in severe disciplinary action. Moreover, the letter of reprimand
22 specifically states that it will remain in her file for a period not to exceed eighteen months;
23 Silva's deposition testimony appears to confirm this. *See Kortan v. Cal. Youth Authority*, 217
24 F.3d 1104, 1112-13 (9th Cir. 2000) (a negative evaluation that does not remain in employee's
25 file is not an adverse employment action). There was no employment consequence as a result
26 of the letter and Silva admits that the author of this letter probably did not know about the
27 2001 incident. There having been no employment consequences and the letter having been
28 apparently removed from Silva's file, the issuance of the letter of reprimand does not

1  constitute an adverse employment action.

2        Silva's fifth alleged adverse employment action is that management investigated Silva
3  after Davis made the allegation that Silva had been selling drugs out of her home. Further,
4  Silva claims Mr. Ainsworth's failure to tell her of Davis' allegations was an adverse
5  employment action. Silva does not explain how this conduct is an employment action. *See*
6  *e.g., Joseph v. Leavitt*, 465 F.3d 87, 91 (2nd Cir. 2006) (there was no adverse employment
7  action where employee was placed on paid administrative leave while criminal charges were
8  pending); *Singletary v. Missouri Department of Corrections*, 423 F.3d 886, 892 (8th Cir.
9  2005) (no adverse employment action when placed on administrative leave pending
10 investigation); *Peltier v. United States*, 388 F.3d 987, 988 (6th Cir. 2004) (suspension with
11 pay and benefits during investigation into suspected wrongdoing is not an adverse
12 employment action); *Von Gunten v. Maryland*, 243 F.3d 858, 869 (4th Cir. 2001) (no adverse
13 employment action where short administrative leave pending investigation of complaint);
14 *Breaux v. City of Garland*, 205 F.3d 150, 154-55, 158 (5th Cir. 2000). Here, Silva was not
15 even placed on administrative leave during the investigation. Defendant's conduct does not
16 constitute an adverse employment action.

17       Silva's sixth alleged adverse employment action is that Silva had to work near Davis.
18 Scheduling an employee with a co-worker who is openly hostile may constitute an adverse
19 employment action in a retaliation claim. *Brooks v. City of San Mateo*, 229 F.3d 917 (9th
20 Cir. 2000). Silva's deposition testimony establishes that, at times, Davis is openly hostile to
21 her. However, that testimony also establishes that Silva and Davis were able to work
22 professionally together, a supervisor is frequently in the area, and that shift changes do not
23 require Silva to constantly work with Davis. If this were a retaliation claim, this may
24 constitute an adverse employment action. However, in this disparate treatment case, this
25 conduct does not constitute an adverse employment action.

26       Silva's eighth alleged adverse employment action is that, on June 22, 2006, Silva was
27 displaced from her cashier position to a less favorable position while Davis was left in an
28 office position. It appears that Silva and Davis each have received more favorable

1 assignments (that have resulted in their working together).  From her deposition testimony, 2 Silva has shown that, although she continues to work the cashier position during some shifts, 3 during other shifts she is assigned a less favorable task.  The testimony establishes that Silva 4 and Davis were each assigned office positions, but when Silva complained about working 5 with Davis, she was then assigned a less favorable task during times when the office position 6 would require her and Davis to work together.  A transfer may be an adverse employment 7 action.  *See Ray v. Henderson*, 217 F.3d 1234 (9th Cir. 2000); *Steiner v. Showboat Operating* 8 *Co.*, 25 F.3d 1459 (9th Cir. 1994) (questioning whether a transfer to a different shift was an 9 adverse employment action).  It appears that a material issue of fact has been presented as 10 to this claimed adverse employment action.  However, this incident occurred after Silva filed 11 her Complaint and is not alleged in her Complaint.  Indeed, Silva's pleadings and deposition 12 testimony indicate this conduct is retaliation rather than disparate treatment.  Either way, this 13 claim is not before the Court.

14 The pleadings and deposition testimony indicate that Silva may also be claiming that 15 she was no longer eligible for promotions.  However, the deposition testimony clearly 16 establishes that she did not apply for any promotion.  Moreover, this appears to be another 17 claim of retaliation.  The Court cannot determine if there was an adverse action where Silva 18 did not apply for any promotion.  *See e.g., Pejic v. Hughes Helicopters, Inc.*, 840 F.2d 667, 19 673 (9th Cir. 1988) ("If [claimant] never applied, it is difficult to infer he was denied the 20 promotions.").  There is no genuine issue of material fact presented as to this issue.

21

22 *Disparate Treatment by Same Discipline*

23 As to Silva's allegation regarding the discipline she and Davis each received, the issue 24 is whether there is a material factual dispute whether Davis was treated more favorably. 25 Indeed, ultimately Silva and Davis received the identical discipline for the same incident. 26 Silva must show, at the least, that she and Davis are similarly situated in all material respects. 27 *See Aragon v. Republic Silver Statte Disposal, Inc.*, 292 F.3d 654, 660 (9th Cir. 2002), *citing* 28 *with approval McGuinness v. Lincoln Hall*, 263 F.3d 49, 53-54 (2nd Cir. 2001).  Similarly,

- 13 -

1  other circuits have discussed the necessity for the court to consider the conduct and discipline
2  in determining whether another employee was treated more favorably. *See e.g., Maynard v.*
3  *Board of Regents of the Univ. of Florida Department of Education*, 342 F.3d 1281, 1289
4  (11th Cir. 2003) (critical factors in the disciplinary context "are the nature of the offenses
5  committed and the nature of the punishments imposed"); *Ercegovich v. Goodyear Tire &*
6  *Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) ("the plaintiff must show that the
7  'comparables' are similarly-situated in all respects"); *Lynn v. Deaconess Med. Center-West*
8  *Campus*, 160 F.3d 484, 487 (8th Cir. 1998) (requiring that employees be "similarly situated
9  in all respects").

10  In this case, Silva has not shown that other employees were treated more favorably
11  for similar conduct. Indeed, the conduct exhibited by Davis appears to be more serious than
12  Silva's conduct[5]; the Court cannot consider, therefore, if persons exhibiting similar conduct
13  as Silva are treated more favorably. It must be recognized, however, that the crux of Silva's
14  allegations is that she and Davis were treated similarly when they should not have been; i.e.,
15  Defendant held Silva to a higher standard of conduct because her conduct was not as
16  culpable and she did not have a prior misconduct incident. Neither side has presented any
17  factually similar cases.[6]

18  Moreover, Silva's allegations fail to consider that Silva has failed to show that she and
19  Davis were similarly situated procedurally. The initial discipline actions received by Silva
20  and Davis were not the same. It was Davis' conduct in appealing his initial discipline that
21  resulted in the same discipline as Silva, not the conduct of Defendants. No material factual
22  dispute has been presented that a person similarly situated was treated more favorably than

---

[5]The Court notes that, during argument, counsel for Defendant stated that the conduct was precisely the same. However, accepting the facts presented by Silva indicates that Davis' conduct was more egregious during the confrontation.

[6]Silva cites to *Lynn Deaconess Medical Center-West Campus*, 160 F.3d 494 (8th Cir. 1998). In that case, the co-worker's conduct was more egregious and the co-worker received a less severe discipline. In other words, that co-worker was treated more favorably. Davis was not treated more favorably in this case.

- 14 -

1  Silva.

2

3  *Legitimate Nondiscriminatory Reasons – August 26, 2001 Incident*

4  Assuming *arguendo* that Silva had shown a genuine issue of material fact, the Court would then consider whether Defendants had shown a legitimate, nondiscriminatory reason for its action. This burden is satisfied by admissible evidence and "can involve no credibility assessment." *Reeves*, 530 U.S. at 142, 120 S.Ct. at 2106. It is "significantly less than proving the *absence* of discriminatory motive." *Lynn v. Regents of Univ. of Calif.*, 656 F.2d 1337, 1344 (9th Cir. 1981). Subjective criteria may satisfy an employer's burden. *Chapman v. AI Transport*, 229 F.3d 1012, 1034 (11th Cir. 2000) (employer's testimony that plaintiff was not sufficiently aggressive and gave imprecise answers were nondiscriminatory reasons supporting summary judgment for the employer).

As to the claim regarding Silva's discipline for the August 26, 2001, incident, Defendant has established a nondiscriminatory reason for its action: Plaintiff received discipline for her conduct at the port of entry on August 26, 2001. Indeed, Silva does not assert that the discipline she received was inappropriate. Rather, Silva asserts that the discipline that Davis received was inappropriate. However, Defendant has also established a legitimate nondiscriminatory reason for that action: Donna De La Torre, the Director of Field Operations for the Tucson Office stated that, following Davis exercising his right to object to the proposed suspension, she reviewed the file and determined that mitigation was appropriate because Davis expressed remorse, Davis made assurances that his conduct would not be repeated, and time had lapsed from the incident to the issuance of the decision.

An employer's proof of legitimate, nondiscriminatory reasons for its actions dispels the inference of discrimination raised by plaintiff's *prima facie* case. The *McDonnell Douglas* framework "disappears," leaving plaintiff with the ultimate *burden of persuading* the trier of fact that defendant intentionally discriminated against plaintiff. *Reeves*, 530 U.S. at 142, 120 S.Ct. at 2106. Plaintiff may satisfy this burden by proving the legitimate reasons offered by defendant were not its true reasons, but merely a pretext for discrimination; i.e.,

- 15 -

that "the employer's proffered explanation is unworthy of credence." *Reeves*, 530 U.S. at 143, 120 S.Ct. at 2106, internal quotes omitted. Where a plaintiff demonstrates the "weaknesses, implausibilities, inconsistencies, incoherences, or contradictions" in an employer's proffered reason, an issue of fact was raised whether employer's reasons were a pretext for age discrimination. *Brewer v. Quaker Oil Refining Corp.*, 72 F.3d 326, 331 (3rd Cir. 1995). Thus, an employer would be entitled to judgment as a matter of law if (1) the record conclusively reveals some other, nondiscriminatory reason for the employer's decision or (2) plaintiff created only a weak issue of fact as to whether employer's reason was untrue and there was "abundant and uncontroverted independent evidence that no discrimination had occurred." *Reeves*, 530 U.S. at 148, 120 S.Ct. at 2109.

The record on the Motion for Summary Judgment establishes nondiscriminatory reasons for the discipline received by Silva and Davis. Silva asserts that Defendant's reasons are pretextual and that the evidence is such that a jury could infer that Defendant's explanation for the disparity is false:

1. Defendant has a progressive disciplinary policy.

2. Silva asserts that following the progressive disciplinary policy would result in consideration of an employee's history of conduct, including incidences of aggression. Conduct such as that exhibited by Davis on August 26, 2001, should lead to the termination of the employee. Defendant's current practice and practice at the time of the incident is to take into account prior transgressions in deciding an appropriate discipline. This information is provided by Mr. Silva who has worked for Customs and Border Protection since 1987; Mr. Silva is Silva's husband.

3. Defendant's stated reason for reducing Davis' discipline raises a question regarding Defendant's true motive because Defendant's conduct goes against the expected practice and contradicts Defendant's actual practice.

4. Defendant ignored Davis' pattern of aggressive conduct.[7]

Silva has created a weak issue of fact as to whether Defendant's reasons were untrue by

---

[7] Defendant objects to the evidence presented by Silva. For example, the only foundation provided for Mr. Silva's (Plaintiff's husband) statement is that he works for Customs and Border Protection. He has not stated that his knowledge of the disciplinary policy and how it is implemented is based on personal knowledge. It appears to result from hearsay.

- 16 -

relying on evidence without foundation and conclusory statements. Silva has not controverted the reasons set forth by Defendant but merely argues that a jury could infer Defendant's explanation is false. Silva has not demonstrated any weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in Defendant's stated reasons. The Court finds that a genuine issue of material facts has not been presented.

Accordingly, IT IS ORDERED:

1. Defendant's Motion for Summary Judgment [Doc. # 32] is GRANTED;

2. The Clerk of the Court shall enter judgment in favor of Defendant accordingly and shall then close its file in this matter.

DATED this 19th day of June, 2007.

_____
Cindy K. Jorgenson
United States District Judge